UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SCOTT C. THERRIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 06-31-B-W |
| | ) | |
| TOWN OF JAY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON PLAINTIFF'S MOTION *IN LIMINE* TO ADMIT ROGER BALDRIDGE'S PREVIOUS STATEMENTS

Finding that evidence of a witness's prior statement properly fits within Federal Rule of Evidence 801(d)(1), the Court grants the Plaintiff's motion *in limine*.

## I. STATEMENT OF FACTS

Scott Therrien has initiated an excessive force claim pursuant to 42 U.S.C. § 1983 against municipal police officer Stephen J. Gould.[1]  On February 27, 2004, Mr. Therrien and his passenger Roger Baldridge were pulled over after leading multiple law enforcement officers on a several-minute, low-speed chase through two Maine towns.  After Mr. Therrien exited the vehicle, Officer Gould executed a lawful takedown.[2]  Mr. Therrien alleges that, after being taken to the ground, Officer Gould assaulted him with blows, kicks and/or punches and knocked him unconscious.

---

[1] The Court previously recounted the substantive facts and will not now repeat them.  *See Therrien v. Town of Jay*, Civil No. 06-31-B-W, 2007 U.S. Dist. LEXIS 26239 (D. Me. Apr. 6, 2007).  The Court now recites only those facts pertinent to the pending motion.
[2] Mr. Therrien initially claimed the takedown itself violated § 1983, but the Court ruled it did not.  *See Therrien*, 2007 U.S. Dist. LEXIS 26239, at *40-41.

On November 16, 2004, Anne Letendresse[3] interviewed Mr. Baldridge and recorded the interview, which was later transcribed. Nearly two years later, on August 20, 2006, the Defendant took Mr. Baldridge's videotaped deposition. During direct examination, Mr. Baldridge testified that after Mr. Therrien was on the ground, he heard him say:

> 'ahh' a couple of times and, you know, that's – you could hear him, you know, making sounds like, 'oh,' you know, hurting somebody, you know. I don't know if they were hurting him maybe putting the handcuffs on. I don't really know, but after, you know, you could see why he was going 'ouch' and everything.

*Baldridge Dep.* at 45:13-19 (Docket # 25).

Counsel for Defendant then asked a series of questions concerning whether Mr. Therrien had attempted to influence Mr. Baldridge's testimony. Mr. Baldridge replied that Mr. Therrien had contacted him about three times during the thirty days leading up to his deposition. *Id.* at 48:4-11. He testified that Mr. Therrien had asked him a number of questions about his recollection of the incident, including what had happened when Mr. Therrien was on the ground. *Id.* at 49:17-22. Mr. Baldridge further stated that Mr. Therrien told him that he "was going to make a lot of money from this, and he said this would be one of the best shutdowns that I ever been on . . . ." *Id.* at 50:5-7. Mr. Baldridge confirmed that he understood the reference to "shutdown" as an opportunity to make "a lot of money." *Id.* at 50:15-23. He said he was not certain whether Mr. Therrien was "offering money," but later elaborated that he did not think Mr. Therrien was suggesting that Mr. Baldridge get money for his testimony, instead, that Mr. Therrien himself was going to make money. *Id.* at 50:12-14, 51:2-7.

---

[3] Ms. Letendresse was employed by the insurer for one of the defendants; however, this fact is not mentioned in the transcribed portion of Mr. Baldridge's deposition that is subject to the pending motion *in limine*.

In response, Plaintiff's counsel questioned Mr. Baldridge about his statements to Ms. Letendresse to demonstrate that his deposition testimony was consistent with his previous statements about the events. The prior statement contains the following:

> Well, he got outta the – outta the car – out of the truck or whatever and – uh – all – all of a sudden, I mean, like five cops – they just surrounded him, you know. And – uh – I was back on the tailgate, and I heard him moaning. I didn't ever really know what actually was going on, you know, with that. 'Cause there was another cop back there on me. And – uh – about that time, I heard him moan again, you know. And – I – I – I couldn't – I didn't ever really see nobody hit him or nothing. But I know somebody was, you know. There was – there was too much – or too many people around him to see – see though. You know what I'm saying?

*Id.* at 77:17-25, 78:1-4.

The Defendant designated the testimony about the conversation between Mr. Baldridge and Mr. Therrien and Plaintiff counter-designated the testimony about the Letendresse statement. Plaintiff moved *in limine* to determine the admissibility of his reference; Defendant objected. *Pl.'s Mot. in Limine* (Docket # 45) (*Pl.'s Mot.*); *Def.'s Resp. to Pl.'s Mot. in Limine* (Docket # 62) (*Def.'s Resp.*).

## II. DISCUSSION

The Federal Rules of Evidence provide:

> A statement is not hearsay if . . . The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .

FED. R. EVID. 801(d)(1)(B). The First Circuit has stated:

> Under that rule, prior consistent statements that would otherwise be inadmissible hearsay evidence may be admitted into evidence when: (1) the declarant testifies at trial and is

3

> subject to cross-examination; (2) the challenged statements and trial testimony are consistent; and (3) the challenged statements are offered to rebut a charge that the declarant recently fabricated his story, or that the declarant became subject to some improper influence or motive to falsify after making the statements.

*United States v. Awon*, 135 F.3d 96, 99-100 (1st Cir. 1998).  As the Supreme Court has made clear, "[t]he Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told." *Tome v. United States*, 513 U.S. 150, 157-58 (1995).  As such, there is a critical "requirement that the consistent statements must have been made before the alleged influence, or motive to fabricate, arose." *Id*. at 158.

Here, Mr. Therrien argues that Mr. Baldridge's statements made to Ms. Letendresse are admissible to rebut the suggestion that, due to Mr. Therrien's improper influence, Mr. Baldridge fabricated or colored his testimony.  Since Mr. Baldridge gave the Letendresse statement long before Mr. Therrien contacted him, the Plaintiff argues that the timing defeats the Defendant's implicit charge of recent fabrication or improper influence or motive.

The Defendant responds that Rule 801 is limited to an express or implied charge of recent fabrication or improper influence or motive "against the declarant," and he asserts that the "questioning of Defendant's counsel and the answers of Baldridge do not suggest that *Mr. Baldridge* is fabricating his testimony.  Rather, the witness concedes that through the content of the contacts, *Plaintiff Therrien* was trying to improperly influence him (Baldridge)." *Def.'s Resp.* at 4 (emphasis in original).

Although the Defendant correctly cites the restriction in Rule 801, in the Court's view, in the circumstances here, the Plaintiff is correct.  Rule 801(d)(1)(B) includes not merely express, but also implied claims of recent fabrication.  Even if the Defendant does not expressly make the argument, a jury could well conclude that Mr. Therrien successfully

4

influenced Mr. Baldridge, thereby discounting Mr. Baldridge's testimony. Since the Letendresse statement was given in November 2004, well before Mr. Therrien's implied influence in August 2006, the rule obtains. Mr. Baldridge's statements are admissible under Rule 801(d)(1)(B).

## III. CONCLUSION

The Court GRANTS Plaintiff's Motion *in Limine* (Docket # 45).[4] If the Defendant introduces evidence of the contact between the Plaintiff and Roger Baldridge prior to the Baldridge deposition, the Plaintiff will be allowed to introduce evidence of the Letendresse statement.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 4th day of June, 2007

---

[4] Defendant has also moved to exclude certain portions of the Baldridge deposition. *Defendant's Motion on Roger Baldridge Deposition Editing* (Docket # 59). Part of the Defendant's motion is subsumed by the Court's decision to grant the Plaintiff's Motion *in Limine*. In addition, however, the Defendant argues that Mr. Baldridge's statement that after being stopped, he "responded quicker because I didn't want to get shot or beat up or whatever" is not probative of any issues before the jury and "is an improper, inflammatory, and unfairly prejudicial lay opinion." *Id.* at 2. The Court disagrees and concludes that the probative value of such evidence exceeds any prejudicial impact. The Court DENIES Defendant's motion on Roger Baldridge's deposition.